Opinión disidente emitida por la
Juez Asociada Señora Ro-dríguez Rodríguez,
a la que se une el Juez Presidente Señor Hernández Denton.
Se encuentra ante nuestra consideración un nuevo inci-dente en el drama procesal que generó el cierre de opera-ciones de la planta de Baxter Healthcare Corporation of Puerto Rico, Inc., sita en Carolina. En esta ocasión, debía-mos resolver si el pago que efectuó voluntariamente Baxter a sus empleados al cierre de sus operaciones en la planta de Carolina, podía acreditarse al pago que le corresponde hacer en concepto de mesada bajo la Ley Núm. 80 de 30 de mayo de 1976, según enmendada (Ley Núm. 80).
Desafortunadamente, este Tribunal nuevamente y erra en peijuicio de la parte peticionaria.
Repasemos nuevamente los hechos que sirven de tras-fondo a esta controversia.
I
Baxter Healthcare Corporation of Puerto Rico, Inc. (Baxter) es una corporación foránea organizada bajo las leyes de Alaska, autorizada a hacer negocios en Puerto Rico y que se dedica a la manufactura de productos médi- *740 cos y farmacéuticos en Puerto Rico. En 1995, Baxter anun-ció públicamente que luego de un análisis de sus operacio-nes mundiales y como mecanismo para mejorar su competitividad en una economía globalizada, se proponía reestructurar y consolidar sus operaciones en distintos lu-gares del mundo, incluyendo a Puerto Rico. Como resul-tado de ello, en 1998 Baxter cerró la planta de Carolina, consolidando las operaciones de alguno de los productos que allí se producían en otras plantas en Puerto Rico (Ja-yuya y Aibonito), y en otras plantas en Estados Unidos (Carolina del Norte e Illinois) y descontinuó la producción de otros productos que se manufacturaban en Carolina (tu-bos renales).(1) Como parte de su reestructuración, Baxter vendió su operación en Culebra y cerró el almacén que ope-raba en Carolina.
Los empleados que fueron cesanteados por Baxter al cierre de sus operaciones recibieron una indemnización por terminación de empleo que se calculó a base de un mes de sueldo, una semana por cada año de servicio, más el 10% de esa suma. La compañía comunicó a sus empleados el pago de esta indemnización mediante un memorando de 31 de octubre de 1995. En este memorando Baxter catalogó el pago como la mesada. Indicó expresamente que aun cuando la Ley Núm. 80 no requería el pago de mesada por el cierre de una planta, “Baxter ... pagará mesada así como proveerá otros beneficios a los empleados regulares”. En este memorando se indicó a los empleados cómo se haría el cómputo de la mesada, si la “mesada afecta el desempleo”, y cuándo se pagaría.
Así las cosas, varios empleados de Baxter presentaron ante el Tribunal de Primera Instancia una demanda sobre despido injustificado, represalias y discrimen por razón de edad, al amparo de la Ley Núm. 80; la Ley contra el Dis-crimen en el Empleo, Ley Núm. 100 de 30 de junio de 1959 *741 (29 L.P.R.A. see. 146 et seq.), y la Ley de Represalias contra Empleados, Ley Núm. 115 de 20 de diciembre de 1991 (29 L.P.R.A. see. 194 et seq.). En total, se presentaron cuatro demandas separadas, las cuales, eventualmente, se consolidaron.
En las demandas presentadas se alegó, en síntesis, que Baxter, a pesar de decretar el cierre total de las operacio-nes en la planta de Carolina, verdaderamente no cesó sus operaciones, sino más bien las transfirió a otras plantas en Puerto Rico y Estados Unidos. Se alegó que no hubo el cierre de operaciones que contempla la Ley Núm. 80 como justa causa para un despido. Los demandantes, en sus res-pectivas demandas, alegaron también que la cesantía obe-deció a represalias de parte del patrono por motivo de una querella que se presentara ante la Unidad Antidiscrimen del Departamento de Trabajo y Recursos Humanos de Puerto Rico por los hechos antes descritos. Baxter contestó las demandas presentadas negando lo aseverado y presen-tando, a su vez, varias defensas afirmativas.
Luego de que se consolidaran las demandas presenta-das, Baxter solicitó que se dictara sentencia sumaria a su favor según el fundamento de que el despido de los deman-dantes se debió exclusivamente al cierre total de las ope-raciones de la planta de Carolina, lo que era justa causa bajo la Ley Núm. 80. Negó que el despido estuviese moti-vado por razón de la edad de los empleados o fuese como represalia por éstos haber presentado una querella ante la Unidad Antidiscrimen. Además, planteó que la reclama-ción de discrimen por razón de edad estaba prescrita en tanto el término comenzó a transcurrir desde que se le no-tificó la fecha de la cesantía, no desde la fecha del despido como tal.
Por su parte, el 4 de septiembre de 2001 los demandan-tes solicitaron que se dictase sentencia sumaria a su favor según el fundamento de que el despido fue injustificado, discriminatorio y producto de represalias por la presenta- *742 ción de la querella en la Unidad Antidiscrimen por un grupo de empleados.
Celebrada la vista en su fondo, el tribunal primario dictó sentencia parcial enmendada.(2) En la sentencia dic-tada, el tribunal concluyó que el despido fue injustificado y los demandantes tenían derecho a la compensación que concede la Ley Núm. 80. El tribunal ordenó a las partes a ponerse de acuerdo sobre la suma que le correspondía a cada demandante como mesada. Señaló, que de no lograrse un acuerdo, pautaría una vista evidenciaría para determi-nar las cantidades de las indemnizaciones. Además, de-claró “sin lugar” la solicitud de sentencia sumaria de Baxter en torno a la reclamación al amparo de la Ley Núm. 100 y, en su lugar, efectuó un señalamiento para la conti-nuación de los procedimientos en lo relativo a las reclama-ciones conforme a la referida ley.
Inconforme con tal determinación, Baxter recurrió ante el Tribunal de Apelaciones y este foro revocó la determina-ción recurrida tras concluir que el despido fue justificado.
Insatisfechos con esta determinación, los demandantes recurrieron ante este Tribunal. Mediante Sentencia de 30 de junio de 2005, revocamos el dictamen recurrido. La sen-tencia dictada concluyó que “por no haberse dado un cierre total, ni temporero ni permanente, sino que Baxter tras-ladó la operación de la planta de Carolina, hubo un despido injustificado de sus empleados según la Ley 80, ... [por lo que] estos tienen derecho a la indemnización corres-pondiente”.(3) Se reinstaló así, “la determinación del foro primario en cuanto a la reclamación bajo la Ley 80”.
*743 Respecto la determinación de discrimen y represalias, resolvimos que el tribunal apelativo había errado al desestimarlas. Devolvimos el caso para que se celebrara la vista en su fondo en cuanto a este asunto. Cabe aclarar que el asunto que hoy nos ocupa, si procede acreditar al pago de la mesada bajo la Ley Núm. 80 el pago por terminación de empleo que efectuó Baxter, no fue objeto de revisión en el certiorari presentado en ese momento, por lo que no fue un asunto que atendimos en la sentencia dictada.(4)
Devuelto el caso al foro de instancia, el 12 de mayo de 2006 los demandantes presentaron una moción solicitando que se ordenara el pago de la mesada. Los demandantes informaron que las partes intentaron, sin éxito, llegar a un acuerdo sobre las cuantías a pagarse ya que Baxter argüía que se debía acreditar al pago de la mesada bajo la Ley Núm. 80 el pago hecho en concepto de terminación de empleo. Sobre este asunto, los demandantes señalaron que Baxter nunca alegó el pago como defensa afirmativa en su contestación a la primera demanda presentada el 10 de mayo de 1999 ni planteó dicho asunto ante el Tribunal de Apelaciones, ni en su recurso y posteriores solicitudes de reconsideración ante este Tribunal, de modo que renunció al planteamiento.
*744 El 19 de junio de 2006 Baxter se opuso a la solicitud de los demandantes y, a su vez, solicitó que se le acreditara la compensación pagada a los demandantes al momento de la cesantía. Adujo que dicha compensación —que ascendió a $3,423,331— fue denominada como “mesada” y así se le notificó a los empleados. Además, adujo que este pago po-seía las mismas características y el mismo propósito de la mesada concedida al amparo de la Ley Núm. 80, ya que se computó a base de los años de servicio, el salario más alto devengado e, incluso, se le añadió un 10% adicional. A su juicio, no deducir las sumas ya pagadas resultaría en una doble compensación por los mismos hechos y un enriqueci-miento injusto por parte de los demandantes. Planteó, ade-más, que la reclamación de los demandantes a los efectos de exigir el pago íntegro de la mesada adicional a lo ya pagado era contrario a los principios de buena fe, equidad y trato justo.
Por otro lado, Baxter planteó que aun cuando no for-muló expresamente la defensa de pago en su contestación a la primera demanda, incluyó la defensa de aceptación y pago en finiquito, en la cual se encuentra subsumida la del pago. Expuso, además, que incluyó la defensa de pago en su contestación a dos de las demandas presentadas, por lo que al consolidarse los casos todas las defensas que se ha-bían presentado se acumularon. De modo que no se trataba de un asunto novel que era desconocido por los demandan-tes, ni mucho menos renunció a dicha defensa.
El 3 de octubre de 2006 el Tribunal de Primera Instan-cia emitió una resolución y orden, ordenando a Baxter a pagar, entre otros, la totalidad de la mesada que concede la Ley Núm. 80, sin deducción alguna. También impuso el pago de un interés de 5.25%, acumulado y computado a partir del 28 de abril de 2003, fecha de la sentencia parcial enmendada que dispuso de forma final de la reclamación sobre despido injustificado. El tribunal concluyó que Baxter nunca planteó previo a la etapa de ejecución de senten- *745 cia, sus argumentos en torno al alegado crédito que osten-taba a raíz de las cuantías que pagó a los empleados a la fecha de su cesantía; por lo cual, renunció a dicha defensa. Como consecuencia, conforme a la doctrina de la ley del caso, no podían revisarse asuntos relativos a la reclama-ción bajo la Ley Núm. 80 que fueron adjudicados de forma final y firme.
Inconforme, Baxter recurrió al Tribunal de Apelaciones mediante un certiorari. Asimismo, solicitó la paralización de los procedimientos ante el foro de instancia mientras se dilucidaba el recurso en sus méritos. El foro apelativo or-denó la paralización de los procedimientos relativos a las cuantías adeudadas por motivo de la sentencia parcial enmendada.
En su petición de certiorari, Baxter presentó los mismos argumentos esgrimidos previamente ante el foro primario. Argüyó, además, que el foro primario incidió al imponer el pago de intereses a computarse desde la fecha de la sen-tencia parcial enmendada, en vista de que en tal fecha no se habían fijado las cuantías específicas por ser pagadas en concepto de mesada, por lo cual resultaba irrazonable cal-cular los intereses a partir de dicha fecha.
Tras varios trámites procesales, el tribunal apelativo emitió sentencia confirmando la resolución recurrida. Dicho foro resolvió que conforme a la doctrina de la ley del caso, procedía el pago íntegro de la mesada, sin acreditarle a Baxter las cuantías pagadas por ésta a los demandantes. Sobre el particular, indicó que la compensación otorgada por Baxter a sus empleados obedeció a su liberalidad y en agradecimiento por los años de servicio de sus empleados, por lo cual no cabía hablar de enriquecimiento injusto.
El Tribunal de Apelaciones sostuvo que la imposición de intereses legales se computara desde la fecha de la senten-cia parcial enmendada, en vista de que a pesar de que en tal fecha no se fijó el monto final por pagarse, se trataba de *746 un cálculo matemático basado en una fórmula determi-nada y conocida a cabalidad por las partes. En particular, destacó que las reclamaciones de los 209 empleados, sobre cuyas reclamaciones no existía disputa, eran exigibles desde que se emitió la sentencia parcial enmendada reco-nociéndole su derecho a la mesada. Sin embargo, el tribunal advirtió que era improcedente la imposición de intere-ses en cuanto a los 98 demandantes cuyas mesadas aun estaban en disputa, y en torno a los cuales aún existía una “controversia bona fide sobre los criterios necesarios para fijar a la mesada, incluso, sobre si procede o no, por lo que el dictamen parcial no fue realmente definitivo en cuanto a ellos”.
Inconforme aún, el 7 de mayo de 2008 Baxter acudió ante este Tribunal y mediante moción en auxilio de juris-dicción, solicitó la paralización de los procedimientos hasta la adjudicación final del recurso de certiorari presentado. El 21 de mayo de 2008 ordenamos la paralización de los procedimientos ante el Tribunal de Primera Instancia.
En su recurso, Baxter alegó que incidió el foro apelativo al
... enmendar por fíat judicial la exclusividad de remedios de la Ley de Despido Injustificado;
... negarse a acreditar las sumas cuantiosas ya pagadas en concepto de mesada, en contravención al mandato de la propia Ley 80;
... aplicar la doctrina de la ley del caso cuando lo relativo a la cuantía de las mesadas no fue objeto de adjudicación en la sentencia parcial enmendada;
... ignorar que la negativa a descontar el pago efectuado por Baxter resulta en la concesión de un remedio excesivo; e
... imponer el pago de intereses legales antes de que exis-tiese una sentencia ordenando el pago de una suma específica, ya que el asunto sobre las cuantías a concederse quedó pen-diente para una vista evidenciaria a celebrarse posterior-mente.
Expedimos el recurso. Hoy, este Tribunal confirma la sentencia dictada por el foro apelativo intermedio.
*747 II
La Ley Núm. 80 “le brinda a los trabajadores que han sido despedidos sin justa causa, la oportunidad de disfru-tar de una indemnización que les permita suplir sus nece-sidades básicas durante el tiempo que les pueda tomar con-seguir un nuevo empleo”. (Enfasis nuestro.) Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364, 375 (2001).
El Artículo 1 de la Ley Núm. 80 dispone que todo em-pleado que trabaja mediante remuneración de alguna clase, contratado por tiempo indeterminado, que es despe-dido de su cargo sin que haya mediado justa causa, tiene derecho a recibir de su patrono “en adición [sic] al sueldo que hubiere devengado: (a) el sueldo correspondiente a un mes por concepto de indemnización-, (b) una indemnización progresiva adicional equivalente a una semana por cada año de servicio”. (Énfasis nuestro.) 29 L.P.R.A. sec. 185a. Como vemos, la compensación a la que tiene derecho todo empleado está descrita en la ley como una “indem-nización”. Siendo así, su objetivo es “resarcir los daños su-fridos a consecuencia del despido. Esta indemnización no equivale a una remuneración o salarios por los servicios prestados ni constituye un sustituto del sueldo”. Alvira v. SK & F Laboratories Co., 142 D.P.R. 803, 809 (1997). Su propósito es, como ya apuntamos, ayudar a “suplir [las] ... necesidades básicas [del empleado cesanteado] durante el tiempo que [tome] conseguir un nuevo empleo”. Díaz v. Wyndham Hotel Corp., ante.
En Alvira v. SK & F Laboratories Co., ante, reconocimos que este tipo de protección que la ley le brinda a los em-pleados y obreros de nuestro país es “único”. Unjust Dismissal, Ch. 10.40, Sec. 10.40 [1] [a] (2007)(“Puerto Rico is unique in having legislation providing compensation for any employee under an indefinite term contract who is discharged without good cause.”) En tal rigor, el tratadista Lex Larson comenta lo siguiente:
*748 Puerto Rico is unique in having legislation providing compensation for any employee under an indefinite term contract who is discharged without good cause.
Puerto Rico has enacted what amounts to a mandatory severance pay statute. This law provides indemnity to employees under indefinite term contracts that are discharge without good cause. The indemnification consists of one month’s salary and one week’s salary for each year worked prior to discharge. Employees are further entitled to back pay due them, and any amounts already earned in commissions and pay for vacation time not taken due to work demands. Unjust Dismissal, Ch. 9, Sec. 9A.04[1], pág. 9A-53.
Por otro lado, dado el carácter reparador de la Ley Núm. 80, hemos reiterado que ésta deberá ser interpretada libe-ralmente a favor de los derechos del trabajador. Belk v. Martínez, 146 D.P.R. 215 (1998). Ello no obstante, también hemos destacado que es injusto penalizar a un patrono dos veces por los mismos hechos. S.L.G. Afanador v. Roger Electric Co., Inc., 156 D.P.R. 651 (2002); Belk v. Martínez, ante. A tales efectos, en Belk v. Martínez, ante, pág. 241, indicamos:
Como la Ley Núm. 100, supra, compensa por los daños sufri-dos por el empleado, estos daños incluyen remediar los mis-mos que la Ley Núm. 80, supra, indemniza. La Ley Núm. 100, supra, compensa adecuadamente todos los daños que sufre el empleado despedido. Conceder una indemnización al amparo de dos (2) leyes distintas que tienen los mismos elementos, cri-terios y dependen de la misma prueba, penalizaría al patrono dos (2) veces por un solo acto. (Enfasis nuestro.) •
En S.L.G. Afanador v. Roger Electric Co., Inc., ante, pág. 667, nos reiteramos en esta norma, y señalamos que “si un demandante presenta una causa de acción contra su patrono por despido injustificado y discriminatorio, de de-terminar, el tribunal, que el despido, más que injustificado, fue en efecto discriminatorio, no se concederá una indem-nización bajo las dos leyes en cuestión, ... pues ello consti-tuiría una doble penalización motivada por unos mismos hechos”. (Enfasis nuestro.) De modo que hemos resuelto *749 que no procede conceder mía doble indemnización a un em-pleado despedido sin justa causa, cuando las reclamaciones instadas bajo distintos estatutos tienen los mismos ele-mentos y criterios, se basan en unos mismos hechos y de-penden de la misma prueba, pues ello supondría una doble penalidad para el patrono y una doble indemnización para el empleado.
Por otro parte, hemos expresado en innumerables oca-siones que la compensación que establece la ley, conocida como la mesada, es el remedio exclusivo ante el despido injustificado. S.L.G. Afanador v. Roger Electric Co., Inc., ante; Díaz v. Wyndham Hotel Corp., ante; Vélez Rodríguez v. Pueblo Int’l, Inc., 135 D.P.R. 500 (1994).
Expuesta la doctrina general, pasemos a aplicarla a la controversia que hoy pende ante nuestra atención.
III
A. En su recurso, Baxter arguye que incidió el Tribunal de Apelaciones al no acreditar a la mesada las cuantías ya pagadas a la fecha de la cesantía de los empleados. En apoyo a su posición esgrime variados argumentos. Princi-palmente, aduce que ordenar el pago de la mesada sin acreditar lo ya pagado a los empleados tiene el efecto de penalizar doblemente al patrono por unos mismos hechos, lo que hemos rechazado en el pasado. E.g. Belk v. Martínez, ante; S.L.G. Afanador v. Roger Electric Co., Inc., ante. In-dicó, que la compensación otorgada a los empleados a la fecha de su cesantía obedeció al interés del patrono de ase-gurar que estos contaran con los recursos económicos nece-sarios hasta obtener un nuevo empleo, es decir, que sirve el mismo propósito que persigue la Ley Núm. 80. Apunta ade-más, que la mesada provista por la Ley Núm. 80 es el único remedio disponible ante un despido injustificado, por lo que el no acreditar las cantidades ya pagadas al pago de la *750 mesada que ordenamos, representa un remedio en exceso de lo que contempla la propia ley. Tiene razón Baxter cuando argumenta que de no acreditarse el pago ya hecho a lo que adeuda en concepto de mesada, conlleva su doble penalización por unos mismos hechos.
En este caso, la compensación voluntaria hecha por Baxter tiene todas las características del pago de mesada de la Ley Núm. 80 y se computa siguiendo los lineamientos de esta ley. Ya indicamos que Baxter en sus comunicacio-nes a sus empleados le describió el pago que haría como mesada y les informó también cómo lo calcularía. Fórmula que es similar a lo dispuesto en la Ley Núm. 80. Baxter calculó su pago a base de un mes de sueldo, una semana de sueldo por cada año de servicio, más el 10% de esa suma. La Ley Núm. 80 a su vez dispone, como ya adelantamos, que la mesada se paga a base del sueldo que hubiera reci-bido el empleado, el sueldo correspondiente a un mes y una indemnización adicional equivalente a una semana por cada año de servicio en el empleo. Se advierte de inmediato la gran similitud de la fórmula utilizada para el pago tanto de la mesada de la Ley Núm. 80 y el pago efectuado por Baxter por terminación de empleo.
Además, el pago hecho por Baxter participa de las ca-racterísticas de una indemnización tal y como ocurre con la mesada de la Ley Núm. 80. Baxter le indicó a sus emplea-dos que este pago tenía como propósito “ayudar al em-pleado en la transición al cierre de planta”. Boletín Infor-mativo No. 16 de 20 de junio de 1997. En otras palabras, la compensación concedida participa de las características de una indemnización, pues tenía como propósito resarcir los daños que ocasionaba la pérdida de empleo por el cierre de la planta. Este es precisamente el fin que persigue el pago de mesada que ordena la Ley Núm. 80, según resolvimos en Alvira v. SK & F Laboratories Co., ante.
El hecho de que el pago haya sido voluntario o que se aseveraba que fue en agradecimiento a los años de servicio, *751 no detrae de la naturaleza reparadora del pago efectuado. Con lo cual, los paralelos con la mesada que ordena la Ley Núm. 80 son evidentes. Somos del criterio que imponer el pago de nueva partida por un mismo concepto y basado en unos mismos hechos —el cierre de la planta de Carolina— es claramente una acción punitiva contra el patrono que se revela, a nuestro juicio, irrazonable. No se justifica que en esta ocasión nos desviemos de lo que ha sido nuestra tra-yectoria de, por un lado, proteger al obrero de prácticas inescrupulosas del patrono, pero a la vez, rechazar la penalization doble del patrono por unos mismos hechos y un mismo concepto.(5)
B. El Tribunal de Apelaciones y los recurridos recha-zan el planteamiento de Baxter de que se le acredite al pago de la mesada al amparo de la Ley Núm. 80 los dineros ya pagados a los empleados cesanteados, según el funda-mento que este asunto fue ya adjudicado en la sentencia que dictamos en este caso el 30 de junio de 2005. No tienen razón.
Señalamos anteriormente que en el caso que se trajo ante nuestra consideración la única controversia que se adjudicó fue si el despido de los empleados de Baxter fue injustificado o no de acuerdo con lo dispuesto en la Ley Núm. 80. Contestamos esa pregunta en la afirmativa y de-volvimos el caso para que se computara el pago de la mesada. No estaba ante nuestra consideración el asuntó sobre el crédito, por lo que no pudo haber sido objeto de nuestro dictamen.
La expresión individual en reconsideración de tres jue-ces de este Tribunal sobre este asunto, no cambia la con- *752 troversia en efecto resuelta en nuestra sentencia. No cabe hablar entonces de la doctrina de la ley del caso tal y como nos plantea la parte recurrida.
Y es que la única controversia que adjudicó el tribunal de primera instancia en su sentencia de 28 de abril de 2003, y que posteriormente revisamos, fue precisamente si hubo justa causa para el despido. Sobre el cómputo de la mesada, el foro primario le ordenó a las partes a reunirse para determinar su monto y les indicó que si no podían llegar a un acuerdo se celebraría una vista evidenciaría para determinar la cuantía. El planteamiento con respecto a los cómputos por hacer y qué créditos, si alguno, debían reconocerse, era un asunto por dilucidarse más tarde, como en efecto ocurrió.
Por otro lado, somos del criterio que si bien al contestar la primera demanda presentada en su contra Baxter no presentó la defensa afirmativa de pago, sí incluyó la de aceptación del pago como finiquito o la doctrina de acepta-ción y pago, y en ésta se encuentra subsumida la doctrina del pago como defensa.
Por otra parte, en varias de las demandas instadas con posterioridad a esa primera, Baxter sí presentó esta defensa. Como ya relatamos al inicio, todos los casos fue-ron posteriormente consolidados. En atención a lo anterior, somos del criterio que en efecto se encuentra válidamente ante nuestra atención la contención de Baxter respecto el pago hecho ya a los empleados cesanteados y su plantea-miento de que se le acredite al pago de mesada ordenado.
IV
Por último, Baxter alega que resulta improcedente la imposición de intereses cuando el tribunal nunca ha fijado las cuantías adeudadas a los demandantes ni consta en la sentencia el tipo de interés a pagarse. Por lo que, ausente una determinación sobre una suma líquida, no existe obli- *753 gación alguna de pagar intereses retroactivos a la fecha de la sentencia parcial enmendada. No tiene razón.
La Regla 44.3 de Procedimiento Civil, dispone que “[s]e incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que está en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fe-cha en que se dictó la sentencia y hasta que ésta sea satis-fecha 32 L.P.R.A. Ap. III. El texto citado es claro al hacer mandatario que un tribunal, al dictar sentencia en la que ordena la entrega de dinero, imponga el pago de inte-rés al tipo legal sobre la cuantía de la sentencia, sin excep-ción de clase alguna. Gutiérrez v. A.A.A., 166 D.P.R. 130 (2006).
En el caso ante nuestra consideración no se ha fijado el monto final de la cuantía que Baxter adeuda a los emplea-dos demandantes. Ello no obstante, sí se había ordenado desde el 28 de abril de 2003, el pago de la mesada y éste es un cómputo que se hace a base de la fórmula que se esta-blece en la propia la Ley Núm. 80. Lo que restaba entonces era el cálculo matemático a base de una fórmula preestablecida. El mandato de pagar ya estaba vigente.
En vista de ello, tiene razón el foro apelativo cuando concluye que procede el pago de intereses desde que se dictó sentencia parcial (28 de abril de 2003) sobre las me-sadas de los 209 empleados sobre las que no hay controversia. Sobre los demás casos donde hay disputas so-bre las mesadas, los cuales requieren la celebración de una vista evidenciaría para su fijación, no procedería el pago de intereses a partir del 28 de abril de 2003, sino más bien desde la fecha en que finalmente se determine la cuantía de la mesada.
Por los fundamentos expuestos revocaría la determina-ción del Tribunal de Apelaciones que concluyó que no se podía acreditar a los empleados cesanteados por Baxter el *754 pago hecho ya por ésta en concepto de terminación de empleo. Respecto al cómputo de los intereses se confirma-ría la determinación del foro apelativo intermedio. Proce-dería entonces a devolver el caso al Tribunal de Instancia para la continuación de los procedimientos.

 El cierre de la planta de Carolina fue paulatino, habiendo comenzado en 1995.

 El Tribunal de Primera Instancia enmendó la sentencia parcial para incluir las palabras sacramentales exigidas por la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, en torno a que no existe razón para posponer dictar sentencia sobre las reclamaciones en cuestión hasta la resolución total del pleito.

 Luego de nuestra determinación, la Asamblea Legislativa aprobó la Ley Núm. 95 de 30 de julio de 2007 enmendando la Ley Núm. 80, para dejar establecido que el cierre total, temporero o parcial constituye justa causa para el despido de un empleado. Específicamente se dispuso:
*743 “Se entenderá como justa causa para el despido de un empleado de un estable-cimiento:
“(d) Cierre total, temporero o parcial de las operaciones del establecimiento.
“Disponiéndose, que en aquellos casos en que la empresa posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operacio-nes de cualquiera de estos establecimientos, constituirá justa causa para el despido a tenor con este Artículo.” (Énfasis nuestro.)

 Aun cuando este asunto no estuvo ante la consideración del Tribunal y no fue objeto de nuestra decisión, tres jueces de este Tribunal expresaron criterio sobre el particular. Así, la Juez Asociada Señora Rodríguez Rodríguez en una opinión disi-dente escrita y emitida en reconsideración, a la cual se unió el Juez Presidente Señor Hernández Denton, apuntó que correspondía acreditar al pago de la mesada por la Ley Núm. 80 el pago hecho ya por Baxter por terminación de empleo y que el Tribunal debió considerar ese asunto y así disponerlo en su sentencia. Por su parte, el Juez Asociado Señor Rivera Pérez, en una opinión de conformidad emitida en recon-sideración, expresó el criterio opuesto.

 No podemos pasar por alto también que el legislador ya expresó su criterio de que el cierre total, temporero o parcial de las operaciones de una fábrica constituye justa causa para el despido, de acuerdo con la Ley Núm. 80. Ley Núm. 95 de 30 de julio de 2007. No nos parece razonable, y por el contrario lo consideramos injusto, imponer en este caso una nueva penalidad por algo ya atendido por el legislador.